D. C. O'NEIL, Appellant, *v.* JOHN J. ADAMS.

**Slander and libel:** JUSTIFICATION: EVIDENCE.    Where defendant pleaded the truth in justification of a charge of libel for publishing an account of plaintiff's imprisonment for drunkenness, in which it was stated that plaintiff frequently visited the com-

munity to dispense liquor and rob the citizens of their money, manhood, etc., evidence that plaintiff for a number of years had been taking orders for liquor from residents of this State for a brewing company in another State; that he lived in another town but visited the place in question on secular days and on Sunday, for the purpose of taking orders for liquor and making collections from his patrons; that he was arrested and confined in jail, and while so confined certain occurrences took place within the jail, was pertinent to the issues and admissible.

**Same:** SPECIAL DAMAGES. Where the sale of intoxicating liquor by the plaintiff in an action for libel was illegal, he cannot recover for defendant's libelous publications from which a loss of sales resulted.

**Libel:** JUSTIFICATION: EVIDENCE. Evidence of the demoralizing methods pursued by plaintiff in the sale of liquor is admissible, as tending to sustain a charge pleaded in justification of an alleged libel, that he was engaged in an illegal business and was morally and socially corrupt.

**Same:** EVIDENCE. Where it appeared in an action for publishing an alleged libelous statement concerning plaintiff's arrest for drunkenness, that no information had been filed or warrant issued, it was competent to ask him what the charge was, as the same called for an oral accusation; and, testimony of the justice that plaintiff was brought before him on a charge was admissible to prove that fact, rather than the return of the officer; and, the admission of evidence identifying the docket of the justice before whom plaintiff was taken was proper, in the absence of any proof of what the docket contained; and, that part of the docket showing plaintiff's conviction for drunkenness was admissible in support of the plea of justification for the publication, although admitted by the magistrate to be incorrect in some of its recitals.

**Same.** Evidence that a large number of citizens met at the mayor's office and by agreement invited plaintiff to attend, and there requested him to desist in coming to the town and taking orders for liquors, was admissible in support of defendant's plea of justification.

**Circulation of libel:** PLEADING: EVIDENCE. Where the pleadings limit the circulation of a libelous article to the town where the same was published, proof of its circulation in another town where plaintiff resides is not admissible.

**Libel:** EVIDENCE OF GOOD CHARACTER. The pleading and proof of bad character in justification for a publication imputing such char-

acter, when confined to the place where the same was published, cannot be refuted by showing good character at another place; especially where knowledge of the good character of the party elsewhere was not brought home to the party charged with libel.

**Same:** CREDIBILITY OF WITNESS. When the defendant in an action for libel calls the plaintiff as his witness, he cannot question plaintiff's character for the purpose of impeaching his credibility.

**Pleadings:** AMENDMENT: CONTINUANCE. When the plaintiff in an action for libel offers an amendment during the trial, alleging a wider circulation of the paper containing the alleged libelous matter, he cannot complain of the court's refusal to permit the same to be filed except on condition that defendant be granted a continuance, where he offers no excuse for the delay.

**Libel:** PRIVILEGE: EVIDENCE. Under a plea of privilege the defendant in a libel action may show how he came to publish the article and his purpose in doing so.

**Same:** EXCLUSION OF EVIDENCE: HARMLESS ERROR. When the court instructs that a publication is libelous *per se* and the jury sustains defendant's plea of justification, refusal to permit plaintiff to state what effect the article had on him when called to his attention was not prejudicial.

**Same:** BURDEN OF PROOF: ARGUMENT: PREJUDICE. Where no special damage was alleged in a libel action and defendant admitted the publication and pleaded justification, a ruling that the burden was on defendant was the equivalent of holding that the article was libelous *per se;* and when the court told the jury to allow plaintiff damages unless the defense was established by a preponderance of evidence, so that the only advantage in having the opening and closing argument related to the question of damages, which was not reached by the jury, but only those questions were considered on which the defendant had the burden, no prejudice arose from the ruling.

*Appeal from Wayne District Court.*—HON. H. K. EVANS, Judge.

THURSDAY, OCTOBER 28, 1909.

ON the evening of February 9, 1907, the plaintiff was arrested on the charge of intoxication, and several

days later the defendant, who was editor of a newspaper called the Seymour Leader, in publishing an account of the transaction, headed an article, "The Jug Man Jugged," and said: "The moral and social bunch of corruption that comes here from Centerville every week and at times, nearly every day dispensing liquid damnation to some of our citizens and robbing them of their money, manhood and responsibility was under arrest by our officers on the charge of drunkenness and remained until he sobered up in the city jail. In the morning he gave bond in the sum of $50," etc. It was then noted that the paper had nothing personally against plaintiff, but "the business that he follows so persistently has set the citizens of this place in loathing of his red mug," and comment was made upon the laws which upheld such a business, and it was suggested that there must be some way of putting a stop to the solicitor's business in this State, and reference was made to a recent meeting, stating that "many of his former patrons have declared their intention to forever abandon the drinking habit."

In the issue of May 2, 1907, there was published in the same paper an article, saying "that Dave O'Neil, the dirty little whisky man of Centerville," had been there the week before buying bank deposit certificates at fifty or sixty cents on the dollar. On May 9th plaintiff instituted this suit, alleging that these articles were understood as charging that plaintiff was morally and socially corrupt, was engaged in selling intoxicating liquors in violation of the law, that he was a loathsome and disgusting person, and not a fit associate of respectable people, and that said publications were false, malicious, and defamatory, and tended to excite him to wrath, and expose him to public ridicule and deprive him of public confidence and social intercourse. Thereafter, and on May 16, 1907, defendant published another article in the Seymour Leader entitled, "Dave Skeers Us; He Wants Mon-

ey"—and therein recited in a humorous way that troubles
never come singly; that upon the heels of the bank rob-
bery in the town and the serious sickness of the editor's'
old mare, "the proprietor of the 'O'Neil Drug Company'
of Centerville, known generally in this community by
the cognomen of 'Old Dave' sued us, the publisher and
fighting editor of this paper, for five thousand dollars
for slander. Just think of the compliment Dave uncon-
sciously bestowed upon us, the editor of a little weekly
paper. People here by the score, yes, by the hundreds,
have told us time and again, that they are willing to take
oath upon it, that it would be an impossibility for any-
body, newspaper writer or otherwise, to slander Dave
O'Neil; that he has no character to lose, and being a
minus quantity or lower, any attempt at slander would
roll off the cipher like gease off a duck's back. And now
Dave admits that we slandered him and seeks balm for his
wounded and demoralized character in demanding of us
gold, five thousand gobs of gold, with interest at the rate
of six per cent. from date until he gets it. Dave flatters
our power and ability and wealth. We admit that we
have been pretty free with our eight point type at times
in the effort to emphasize our views on all moral ques-
tions, and the temperance question is surely one, and any
honest effort to rid society of the parasites that feed upon
and destroy it is a worthy one, but any notion of ever
slandering any one, never entered our thoughts."

Then followed a republication of the articles pre-
viously mentioned, adding to the first article that it should
have been mentioned that "Dave was very surly and de-
structible during the term of his imprisonment and among
other mulish actions, knocked the caliboose stove over
and broke it and when arrested the second time, the ad-
ditional charge was made against him for destroying pub-
lic property." After the second article it was suggested
that "The Drug Company had no case—except—a beer

case, and that would not come in this case which we promise you will not come up for trial very soon because the Drug Company is mostly bluff and the balance wind." After referring to a suit of this "semblance of a man" against the officer who arrested him, this was added: "If the Drug Company can't gather from this that the citizens here do not desire his presence here in this community, let him personally interview about two thousand of our citizens, taking them at random. If he finds that the vast majority of our best citizens self-respecting and law abiding, doesn't hold him in less esteem than a common burglar or a sheep killing dog, then we will cheerfully fork over $5,000, with interest thereon at six per cent—and do without our new automobile and a few other little nicknacks, if need be, and do without a trial. Now, mister, come on. The above offer will apply to any one as well as O'Neil, who follows the disreputable and damnable trade of drunkard making, by traveling from place to place, taking beer and whisky orders."

As damages resulting from such publication, judgment for $5,000 was prayed. The defendant in his answer admitted that he was publisher of the Seymour Leader, and that the articles were published as alleged, but denied that they were false, malicious, or defamatory, and averred that the several articles were published in said newspaper as items of news, and that said publications were right, proper, and fitting to be made, and were therefore privileged, and he alleged that the comments made in said articles were reasonable, and were made in good faith and without malice toward plaintiff, and alleged in mitigation of damages that plaintiff's general moral character in Seymour and vicinity was not good. The trial resulted in a verdict and judgment for the defendant. The plaintiff appeals.—*Affirmed.*

*W. H. Sanders,* for appellant.

*Miles & Steel,* for appellee.

LADD, J.—I.   This is an appeal from a judgment for defendant in an action for damages alleged to have resulted from the publication of certain articles in a newspaper, known as The Seymour Leader.   The court

1. SLANDER AND LIBEL: justification: evidence.

held that the articles were libelous, and that the burden of proof was on the defendant to establish the allegations of his answer, which were, in substance, that the articles were true, and were published with proper motives, and, in mitigation of damages, that defendant believed, and had good ground to believe, them true, and in publishing them in his paper acted with proper motives, and also that plaintiff's general moral character in Seymour and vicinity was bad.   In support of these allegations, the plaintiff was called as a witness, and it appeared from his testimony that during eight years previous to February 14, 1907, he had been engaged in the occupation of taking orders from individuals in Iowa on the Ford-Heim Brewing Company of Kansas City, Mo., for beer and whisky.   These orders were sent to that company, and the intoxicating liquor shipped by it to the several purchasers from whom plaintiff collected the purchase price.   His home was at Centerville, but he visited Seymour on Saturdays, and frequently on Sundays, for the purpose of taking orders or collecting from patrons.   In the evening of February 9, 1907, he was arrested on the charge of intoxication, and confined in jail for about an hour.   While there, a stove toppled over and was broken.   This evidence bore directly on the issues raised, and was admissible.

II.   Complaint is made of certain rulings with reference to allegations in amendments to the

2. SAME: special damages.

petition, alleging special damages because of loss of patrons and sale of intoxicating liquors owing to the publications.   As the taking of orders

of customers alleged to have been lost would have been illegal, no injury resulted, and the rulings were correct. *McCollum v. McConaughy,* 141 Iowa, 172.

III.   Exceptions were taken to rulings which permitted testimony by plaintiff of the method pursued in the prosecution of the business he was engaged in, and to the

3. LIBEL: justification: evidence.

extent of that business. Such evidence tended directly to sustain the charge that he was engaged in an illegal avocation, and tended to justify the characterization of him found in the published articles.   True, the court instructed that his occupation was lawful, evidently following *State v. Hanaphy,* 117 Iowa, 15, but that cause has since been found not to have correctly construed the laws of the general government.  *McCollum v. McConaughy, supra.*   Even though the court may have erred in plaintiff's favor in the instructions, the rulings on the admissibility were correct.

IV.   Plaintiff was asked of what he was charged when arrested.   An objection to the effect that this called for secondary evidence was overruled.   As no information had

4. SAME: evidence.

been filed nor warrant issued, the inquiry must have called for the oral accusation, and for this reason the exception is not well taken.   For a like reason the testimony of the justice of the peace that plaintiff was brought before him was admissible, rather than the return of the officer.   Exception is also taken to the rulings admitting evidence identifying the justice's dock and also the docket.   The ruling in the absence of any showing of what the docket contained must be presumed to have been correct.   The mayor's docket was properly identified, and that portion recording the conviction of plaintiff on the charge of drunkenness admissible in evidence.   If some of the recitals were incorrect, plaintiff had the benefit of the mayor's concession to this effect. That the record was admissible to prove his conviction is too clear for argument.

V.  A witness was asked to explain a demonstration to which he had referred, and over objection answered that a large number of citizens met at the mayor's office, and

5. SAME.

by agreement invited the plaintiff in, and asked him if he would not quit coming to the town on the business he was engaged in, to which he answered that he would not. The evidence bore directly on two charges made against him in the articles, and was clearly admissible.

VI.  The petition alleged the circulation of the newspaper in Seymour and vicinity.  Evidence of its circula-

6. CIRCULATION OF LIBEL: pleading: evidence.

tion in Centerville was tendered, but rejected on defendant's objection.  The ruling was sound for that the pleading had limited the field within which injury had been suffered.

VII.  Defendant by way of justification pleaded that plaintiff's general character, and general moral character in Seymour and vicinity at the time of the publication of

7. LIBEL: evidence of good character.

the several articles was bad.  As to the last two articles, this was also pleaded, in mitigation of damages.  Evidence was adduced in support of these allegations, to meet which plaintiff tendered proof of good character in Centerville.  An objection thereto was sustained, and rightly so, for such evidence would not have tended to rebut the testimony concerning his character at Seymour and vicinity, nor would it have obviated the mitigation to which defendant might be entitled in the territory of the newspaper's circulation.

Undoubtedly. proof of general character when in issue generally is not necessarily confined to a single locality. See *Hanners v. McClelland,* 74 Iowa, 318; *McGuire v.*

8. SAME: credibility of witness.

*Kenefick,* 111 Iowa, 147.  But the charge of bad character had not been interposed, nor the evidence introduced, as bearing on his credibility as a witness.  This would not have been

permissible, as plaintiff had been called as defendant's witness. The attempt was to refute evidence of bad character as a justification for using language imputing such, in one locality, by proving that the party's character was otherwise somewhere else. Whether such evidence might be admissible were knowledge of the good character of the party elsewhere brought home to the publisher need not now be considered, for proof of such knowledge was not tendered. In the absence thereof the testimony was rightly rejected. That the character of plaintiff at places other than where the paper was alleged to have circulated was not admissible is too clear to require more than a statement to that effect.

VIII. On the day of the trial plaintiff filed an amendment to his petition, alleging in substance that the Seymour Leader had a large circulation in Appanoose County at the time the articles were published; that many copies reached citizens of Centerville; that marked copies thereof were sent to plaintiff and wife, and the articles were copied in a newspaper at Centerville. On motion of defendant the amendment was stricken; plaintiff being given the option of continuing the case over the term, or have this done. This was on the ground that defendant was not prepared to meet the allegations contained in the amendment. The ruling was within the discretion of the court. Parties who do not complete their pleadings until trial has begun ordinarily have no room to complain if the trial court declines to look with leniency upon their procrastination, especially where no excuse is suggested. The burden of making a showing which excused the delay in pleading the matters set out in the amendment was on plaintiff, and not on defendant, to prove, as is assumed, that he would be prejudiced by proceeding with the trial.

9. PLEADINGS:
   amendment:
   continuance.

IX. Objection was made to testimony of defendant as

to how he came to publish the several articles and his purpose in so doing. This evidence was admissible as tending to support the plea of privilege. *Morse v. Times-Republican Printing Co.,* 124 Iowa, 707; *Prewitt v. Wilson,* 128 Iowa, 198.

10. Libel: privilege: evidence.

X. Objection to an inquiry as to what effect the articles had on plaintiff personally when his attention was first called to the publication was sustained. The ruling might well have been the other way, but there could have been no prejudice, inasmuch as the court instructed in effect that the articles were libelous *per se,* and the jury found that the plea of justification was established.

11. Same: exclusion of evidence: harmless error.

XI. Exception is taken to the court's ruling that the burden of proof was on the defendant. This was tantamount to saying that the articles, the publication of which was admitted, were libelous *per se.* Surely, in the absence of a plea of special damages, this was correct. Even if otherwise, it is difficult to find room for plaintiff's complaint. In the second instruction the jury was told to allow plaintiff damages, unless the defense had been established by a preponderance of the evidence, so that the only advantage, if any, of having the opening and closing related to the amount of damages to be allowed. But the jury did not reach this, and only passed on the issue wherein the burden of proof was cast on the defendant. In these circumstances error can not be predicated on the ruling. *O'Conner v. Kleiman,* 143 Iowa, 435.

12. Libel: burden of proof: argument: prejudice.

XII. Exception is taken to several of the instructions. The criticisms are directed in the main at what they do not contain rather than in any error in what they said. Some of them might well have been more explanatory, but in the absence of proper requests, were without error. Nothing will be gained by reviewing them in detail, nor the evidence, in declining to interfere with the

ruling which denied a new trial. Had the rules of this court been observed by appellant in the preparation of his brief, we should have been more inclined to a separate consideration of the questions presented.

We have discovered no reversible error, and the judgment is *affirmed.*