L. B. AMICK, Appellant, v. ANDREW MONTROSS, Appellee.

JUNE 26, 1928.

*Havner, Flick & Powers* and *Swift & Swift,* for appellant.

*Wallace & Claypool* and *C. R. Off,* for appellee.

WAGNER, J.—The plaintiff in his petition, consisting of five counts, asks damages for slander. He alleges therein that he has pleaded in the alternative Counts 1 and 2, and also Counts 3 and 4, as a matter of conforming to the proof, as it may be offered. At the close of the plaintiff's evidence, he elected, as between Counts 3 and 4, to stand on Count 3, and as between Counts 1 and 2, to stand on Count 2. Upon motion, the court withdrew from the consideration of the jury Count 3; and as to this action by the court, no complaint is made. Upon separate motion, the court also withdrew from the consideration of the jury Count 2; and this action by the trial court is involved in this appeal. The court submitted Count 5 to the jury,

and the jury returned a verdict in favor of the plaintiff for $1.00.

On February 11, 1926, the defendant, in compliance with the statutes, made an offer to confess judgment in the sum of $25, together with all costs accrued to that date, which offer was served according to law upon the plaintiff or his attorneys. The court rendered judgment in favor of the plaintiff and against the defendant for $1.00 and all costs up to and including the date of the aforesaid offer, and against the plaintiff for all other costs. The plaintiff appeals.

In Count 2, the plaintiff alleges that he is a physician and surgeon, located in the town of Millersburg, Iowa, and has been so located for about 14 years, practicing his profession; that the defendant maliciously and untruthfully made a slanderous statement of and concerning the plaintiff to Dr. L. A. Miller, in the presence of Dr. A. C. Schoenthaler, both of North English, Iowa, said statement having been made on or about the month of June, 1925, which statement is as follows:

"I heard Doc. Amick was drunk that night, and wasn't able to go,—was the reason you were called."

Plaintiff further alleges in said count that this statement was made in connection with the birth of George Goodman's baby, which was born in the month of June, 1925, near Millersburg, Iowa, and that said statement was made for the purpose of injuring the business and reputation of the plaintiff; and that, by reason of the making of said statement, plaintiff's business has been injured, and the plaintiff has suffered damages by reason of the making of said statement on the part of the defendant.

In Count 5 of the petition, plaintiff makes the same allegation as to his profession and period of practice, and alleges that, in the month of March, 1925, the wife of the defendant was sick in the town of Millersburg, and the plaintiff, with other doctors, was called to attend her in such sickness; that she died on or about the month of March; and that, after her death, on or about the month of June or July, 1925, the defendant willfully, maliciously, and untruthfully stated to Dr. A. C. Schoenthaler, of North English, Iowa, of and concerning this plaintiff:

"If it had not been for Doc. Amick, the son of a bitch, my

wife would be living to-day,''—the defendant meaning and intending thereby to charge this plaintiff with responsibility for the death of the defendant's wife.

The plaintiff further alleged in said Count 5 that said statement was made for the purpose of injuring the reputation and business of the plaintiff; and that, by reason of the making of said statement, the business of plaintiff has been injured, and the plaintiff has suffered damages by reason of the making of said statement. The plaintiff asks judgment on each count in the sum of $10,000. There is no proof of special damages.

There is evidence of the making of the alleged slanderous statement contained in Count 5. The defendant, as a witness, denied any such utterance.

There is evidence of the making of the alleged slanderous statement contained in Count 2. The defendant's motion for withdrawal of said count from the consideration of the jury is based upon the grounds that the statement of the defendant is not slanderous *per se*, and that, upon the entire record, there is nothing as to said count to be submitted to the jury.

It will be observed that the statement is as to what the defendant has heard. By the great weight of authority, a person is held liable for the publication of slanderous words in regard to another, even though he is but repeating what he has heard. 17 Ruling Case Law 319; *Terwilliger v. Wands*, 17 N. Y. 54 (72 Am. Dec. 420); *Brewer v. Chase*, 121 Mich. 526 (80 N. W. 575); *Kenney v. McLaughlin*, 5 Gray (Mass.) 3; *Haines v. Campbell*, 74 Md. 158 (28 Am. St. 240); *Prime v. Eastwood*, 45 Iowa 640; *Mills v. Flynn*, 157 Iowa 477. Since there was proof of the alleged slanderous language contained in Count 2, the sole question for our consideration at this point is as to whether or not said language is actionable *per se*.

It is the claim of the appellant that, by Count 2, and the evidence in support thereof, the appellee charged the appellant with drunkenness, which he contends is a crime. Conceding,  arguendo, that said count charges the appellant with the commission of a crime,—is the charge of drunkenness slanderous *per se*? There is a wide divergence of opinion and lack of uniformity in the holdings of the courts upon the question as to when the words

charging a criminal offense are slanderous *per se*. While it has been held by some courts that the form of criminal procedure under which the offense is punished is immaterial, and that it is not essential that the offense be indictable, yet the general rule is that the offense charged must be indictable. 36 Corpus Juris 1195; 17 Ruling Case Law 266. See *Estes v. Carter*, 10 Iowa 400.

It is stated in 36 Corpus Juris 1193 that *Brooker v. Coffin*, 5 Johns. (N. Y.) 188 (4 Am. Dec. 337), is the leading case in this country, and that the rule therein laid down is known as the American rule. Said rule, as taken from the case, is:

"In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable * * * ."

In an early case, *Burton v. Burton*, 3 G. Greene 316, this court declared:

"The words charged to have been spoken by the defendant of and concerning the plaintiff impute to him a crime under this statute, which, if true, is punishable by imprisonment, on indictment and conviction. Much uncertainty has existed in the law as to when words in themselves are actionable. Various and conflicting decisions are to be found on this subject. But we believe the true rule by which to test whether defamatory words are actionable *per se* is to be found in the case of *Brooker v. Coffin*, 5 Johns. R. 188. In this case it is held that, if the charge, being true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to infamous punishment, then the words will be in themselves actionable."

The courts are at variance as to what crimes involve moral turpitude, and also as to what constitutes infamous punishment. We quote from *Earley v. Winn*, 129 Wis. 291 (109 N. W. 633), —a leading case in this country on slander,—the following:

"What crimes involve moral turpitude has been the subject of vast contention, extending from the view that moral turpitude inheres in every willful breach of a criminal statute to the position that only those crimes that present such vileness

and depravity as arouses the abhorrence of all mankind are intended. Again, the decalogue, or some other scriptural inhibition, has been thought sufficient by some courts to conclusively ascribe moral turpitude to an act. * * * It is probably true that moral turpitude depends on the conception of the community, which is reflected in the utterances of its judges.''

See, upon this subject, 36 Corpus Juris 1194.

'' 'Infamous punishment' is generally used as synonymous with 'corporal punishment.' In some jurisdictions, imprisonment in the penitentiary, as opposed to a common jail, is essential. In other jurisdictions, a crime punishable by imprisonment in the county jail comes within the rule, and a charge thereof is actionable *per se.*'' 36 Corpus Juris 1195.

Again we quote from *Earley v. Winn*, 129 Wis. 291 (109 N. W. 633):

''Respondent's counsel contend that this expression [infamous punishment] had a definite meaning at common law, which necessitated some element in addition to mere imprisonment, such as castigation, branding, the pillory, and the like, and that we must assume such limitation for it in this rule. Such significance seems, *a priori*, improbable, when we remember that hardly any, if indeed any, of those elements characterized the punishment for any crime at the time of declaring that rule in Wisconsin. While there is pretty general holding in other states that mere fine is not infamous punishment, and much conflict as to whether mere imprisonment in county jails should be so considered, we do not deem essential review or analysis of those cases, for we consider the latter question settled in this state by *Geary v. Bennett*, 53 Wis. 444, 446, 10 N. W. 602, where, with full deliberation, this court held that fine or imprisonment in the county jail constituted 'infamous punishment,' within the meaning of the rule above stated.''

In *Birch v. Benton*, 26 Mo. 153, it was held that punishment, in order to be infamous, means corporal punishment, which may be inflicted as immediate punishment, and not as a consequence of a failure to satisfy a pecuniary fine.

In *Halley v. Gregg*, 74 Iowa 563, it was held that to charge one falsely with letting a house to fallen women for the pur-

poses of prostitution for one night is actionable *per se*. Under Section 4015 of the 1873 Code, then in force, the punishment for the crime of leasing a house for such purpose was a fine not exceeding $300, or imprisonment in the county jail not exceeding six months. It will be observed that the crime in that case was indictable, and the punishment for the crime might be a jail sentence, but could not be imprisonment in the penitentiary. This court is thus committed that, if the offense charged be indictable, and the punishment which may be provided therefor be a jail sentence, then the words charging the offense are actionable *per se*.

We think that there is, and should be, an exception to the general rule that the offense charged must be indictable. To illustrate: larceny when the value of the property stolen is less than $20. See *Quigley v. McKee*, 12 Ore. 22 (53 Am. Rep. 320 ; *Davis v. Mohn*, 145 Iowa 417. There may be other cases, which should not come within the general rule, but we are constrained to hold with the general rule, that ordinarily, in order for language charging one with the commission of a crime to be slanderous *per se*, the crime charged must be indictable, and that it must be one involving moral turpitude, or one which at least may subject the party charged to a jail sentence. *Pollard v. Lyon*, 91 U. S. 225 (23 L. Ed. 308) ; *Hollingsworth v. Shaw*, 19 Ohio St. 430 (2 Am. Rep. 411) ; *Cullen v. Stough*, 258 Pa. St. 196 (101 Atl. 937) ; *Hendrickson v. Sullivan*, 28 Neb. 329 (44 N. W. 448) ; *Chaplin v. Lee*, 18 Neb. 440 (25 N. W. 609) ; *Anonymous*, 60 N. Y. 262 (19 Am. Rep. 174).

Appellant earnestly argues that drunkenness involves moral turpitude, and cites in support thereof *Pett-Morgan v. Kennedy*, 62 Minn. 348 (54 Am. St. 647). In Minnesota, drunkenness is an indictable offense.

It is earnestly contended by the appellee that drunkenness alone is no offense. Section 1931 of the Code of 1924 provides:

"If any person shall be found in a state of intoxication, any peace officer shall, without a warrant, take him into custody and detain him in some suitable place until an information can be made before a magistrate and a warrant of arrest issued, under which he shall at once be taken before the magistrate issuing the same, or, if for any reason he cannot act, to the next nearest one, where he shall be tried, and, if found guilty, shall be fined

in the sum of not less than five nor more than twenty-five dollars and costs of prosecution, or imprisonment in the county jail not more than thirty days.''

Drunkenness and intoxication are synonymous terms.

It is the appellee's contention that, in order for one to be guilty of crime, within the meaning of the aforesaid quoted section, he must not only be drunk, or in a state of intoxication, but in addition thereto, he must be found in a state of intoxication. The force of appellee's argument is that, if one became drunk or intoxicated in solitude, he would not be guilty of any offense, under the aforesaid section. The statutory law, prior to the Code of 1924, reads:

"If any person shall be found in a state of intoxication, *he is guilty of a misdemeanor, and* any peace officer shall, without a warrant, take him into custody * * * " Section 2402, Code of 1897. (The italics are ours.)

It will thus be observed that, in the present statute, the only portion omitted therefrom, as previously written, are the aforesaid italicized words. Whatever offense is charged under the present statute is a misdemeanor. Therefore, the omission of the words hereinbefore mentioned is no substantial change in the statutory law. It is a well recognized rule of construction that criminal and penal statutes are strictly construed. 25 Ruling Case Law 1081; 36 Cyc. 1183; *Clark v. American Exp. Co.,* 130 Iowa 254. The language of the aforesaid section is:

"If any person shall be found in a state of intoxication," etc.

The charge in Count 2 of the petition is not that the appellant was *found* drunk or *found* in a state of intoxication, but only: "I heard that Doc. Amick was drunk." See *Yarbrough v. Commonwealth,* 219 Ky. 319 (292 S. W. 806); *Maynard v. Commonwealth,* 202 Ky. 684 (261 S. W. 10).

We find it unnecessary to determine whether appellee is right in the aforesaid contention, or as to whether drunkenness involves moral turpitude; for, whatever be the offense under Section 1931 of the Code, hereinbefore quoted, it is not indictable; and no reason is apparent to us why said offense should not come within the general rule hereinbefore mentioned. We

therefore hold that any charge of drunkenness contained in Count 2 against the appellant as an individual is not slanderous *per se.*

However, it is the contention of the appellant that the claimed slanderous language referred to in Count 2 is prejudicial to him in his profession, and that for said reason the same is actionable *per se.* This is a well recognized rule of law. 36 Corpus Juris 1165. It is the appellee's claim that the language of said count contains no charge against the appellant in reference to his profession, and that the language used, as shown by the testimony, is not derogatory to the plaintiff in his professional capacity. Dr. Miller testified:

"He [the defendant] made a statement that he heard that Dr. Amick was drunk, the night that the Goodman baby was born, and that was the reason that I was called instead of Dr. Amick, being called."

Dr. Schoenthaler testified that the defendant said to Dr. Miller: "I understand you got out of your territory a little bit the other night, didn't you?" To which Dr. Miller replied: "I don't know that I did." And then the defendant said:

"Well, I heard the reason you were called up to Goodmans' was because Amick was drunk."

Said count alleges that the appellant is a physician and surgeon. It alleges the publication of the claimed slanderous language; that its utterance was malicious; that the same was made in connection with the birth of George Goodman's baby, and for the purpose of injuring the business and reputation of the plaintiff; and that, by reason of the making of said statement, plaintiff's business has been injured; and that the plaintiff has suffered damages by reason of the making of said statement. Are the averments of said count sufficient to charge slander against the plaintiff in his professional character?

Under Paragraph 3 of Section 11111 of the Code of 1924, the petition must contain a statement of the facts constituting plaintiff's cause of action.

Section 12412 of the Code provides:

"In an action for slander or libel, it shall not be necessary

to state any extrinsic facts for the purpose of showing the application to the plaintiff of any defamatory matter out of which the cause of action arose, or that the matter was used in a defamatory sense; but it shall be sufficient to state the defamatory sense in which such matter was used, and that the same was spoken or published concerning the plaintiff.''

This statute does away with the technical rules of pleading relative to ''inducement,'' ''colloquium,'' and ''innuendo,'' required by the common law in actions of slander.

''When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action and *prima facie* constitutes a wrong without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; and this is all that is meant by the terms 'actionable *per se*,' etc. Therefore, the real practical test by which to determine whether special damage must be alleged and proven in order to make out a cause of action for defamation is whether the language is such as necessarily must or naturally and presumably will occasion pecuniary damage to the person of whom it is spoken.'' Newell on Slander and Libel (3d Ed.), Section 187.

It is true that the language alleged to have been uttered does not charge any lack of professional skill or knowledge, or misconduct in appellant's professional capacity as a physician and surgeon, or impropriety in the treatment of Mrs. Goodman or the baby. However, it does charge, in substance, that, at the time when a doctor was needed in the Goodman home, the plaintiff was drunk, and unable to render medical service and attention.

A lawyer, a banker, a merchant, and men engaged in many other occupations have regular business hours. A physician's occupation differs therefrom. Sickness and accidents occur at any hour of the day or night. The emergency may happen at any minute, when the services of a doctor will be needed. The doctor is engaged in the practice of his profession every hour of the day. To say of a physician, in substance, that he was drunk, and unable to attend upon a call, reflects upon his professional

character. One would not be likely to call a doctor, in case of sickness, accident, or emergency, if there were any probable cause for believing that he would be found in a state of drunkenness. Such a charge "necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss."

In *Broughton v. McGrew*, 39 Fed. 672 (5 L. R. A. 406), the plaintiff was an employee, the general manager of a railroad company, and the slanderous language was, "He has been drunk frequently." The court, in passing upon this proposition, made the following pronouncement:

"Now, it is not actionable, or slanderous in the sense of the law, to charge a man generally with being drunk, or being in the habit of getting drunk, or having been drunk. In order that such a charge be actionable, it is necessary to couple it with some business in which drunkenness is a disqualification, or tends to constitute incapacity: that is to say, some business in respect to which the charge of drunkenness would tend to injure the party. The burden of proof is upon the plaintiff to make out his case as he has alleged it to be. He must show the defendant spoke of him, in relation to his employment in the management of the railroad, the words, or a substantial and essential part of the words, charged, and as charged."

If a charge of drunkenness against a manager of a railroad be actionable *per se*, a charge that a physician, whose occupation is such as to require the confidence of his patients and the people generally, was drunk, and unable to attend to a call, is likewise actionable *per se*.

In *Gottbehuet v. Hubachek*, 36 Wis. 515, a charge that, at the time of a conflagration, the engineer of a fire department was drunk, was held actionable *per se*.

"Charging intoxication in connection with one's business tends to challenge his business qualifications and capacity, and is actionable." 36 Corpus Juris 1192.

"Charging an undertaker with intoxication is actionable *per se*." 36 Corpus Juris 1192, Note 22-a.

If to charge with drunkenness one whose occupation requires him to care for the dead be actionable *per se*, a similar

charge against one whose occupation requires him to administer unto the living in time of sickness and distress should also be actionable *per se.*

In *Swan v. Thompson*, 124 Cal. 193 (56 Pac. 878), a charge of drunkenness was made against a master mariner, and the court, in passing upon the proposition, said that this charge "imputes to him a 'general disqualification' in those respects which the occupation peculiarly requires. The occupation of master mariner above all things peculiarly requires a man who is not in the habit of getting drunk." Likewise, the occupation of a physician and surgeon is such that it requires a man who is not drunk at the time when he is called, or, because of a condition of intoxication, is unable to answer the call.

Without further discussion, we hold that the language of said count contains a charge against the appellant in his professional character or capacity, and that the evidence tending to substantiate it is sufficient; and the court was in error in withdrawing the same from the consideration of the jury.

The six remaining alleged errors assigned by the appellant are with reference to the rulings of the court relative to the introduction of testimony as to Count 5.

In a separate count of appellee's answer, he pleaded, by way of mitigation of damages, that the plaintiff was and is a man who, at and prior to the time of the alleged slander, had and bore a general bad reputation as to moral character in the town of Millersburg and vicinity, and that, at and prior to said time, he had and bore a general bad reputation as a physician, surgeon, and doctor in said town and vicinity.

Over the objection of the appellant, the appellee introduced evidence to the effect that the general reputation of the appellant as a doctor, physician, and surgeon at Millersburg and in the vicinity thereof was bad. The appellant's complaint is that the alleged slanderous language was uttered by the appellee to Dr. Schoenthaler at North English, and that, therefore, such evidence as was elicited by the appellee should have been confined to the appellant's general reputation in that respect in the vicinity of North English. The evidence discloses that it is only eight miles between Millersburg and North English. The appellant relies upon *O'Neil v. Adams*, 144 Iowa 385, a suit for

libel against the owner of a newspaper published at Seymour, the plaintiff residing at Centerville. The circulation of the paper in Seymour and vicinity was alleged in the petition. The defendant in said case pleaded, in mitigation of damages, that plaintiff's general reputation as to moral character in Seymour and vicinity at the time of the publication of the several articles was bad, and introduced evidence to that effect. The plaintiff, by way of rebuttal of said testimony, tendered proof of good character in Centerville, which was rejected. It is manifest that the testimony as to the character of the plaintiff in Centerville would not rebut the defendant's testimony as to what it was in Seymour, the place of plaintiff's general bad reputation as to morality, as alleged in the plea of mitigation of damages. Said case is in no way controlling in the instant case. In the case before us, the appellee properly pleaded in mitigation of damages the general bad reputation, as a physician, surgeon, and doctor, of appellant in the town of Millersburg and vicinity. He is asking damages against the appellee for injury to his reputation as a doctor, physician, and surgeon engaged in practice at Millersburg and vicinity. The evidence received was as to that issue, and in exact conformity with his plea of mitigation. The evidence in this respect, of which complaint is made, was properly admitted. See *Sclar v. Resnick,* 192 Iowa 669.

The appellant introduced in evidence the testimony of a witness who, after the proper foundation was laid, testified that the general reputation of the appellant as to moral character in  the community of Millersburg was good, and that, prior to June 1, 1925, he had never heard his moral character called in question. On cross-examination, he testified that he had heard it called in question several times since shortly after the trouble started between the appellant and the appellee, and down to the present time. He was then asked as to whether he had heard various rumors as to the general reputation as to the moral character of appellant in the vicinity of Millersburg, which question the appellee's attorney propounded to him, and he answered in the negative. Such cross-examination was proper. See *State v. Kimes,* 152 Iowa 240, 249. On redirect examination, the witness testified that what he had heard was uttered by Dewey Montross, a part of the Montross outfit. He was then asked what

Dewey Montross said, and, over objection that it was not proper redirect examination, he was allowed to testify:

"Well, he said the Montrosses had decided to run Doctor Amick out of the town of Millersburg, Iowa; 'and before this deal is over, that we are going to take his doctor's certificate away from him, and he will be nothing but a laboring man.' "

This answer was subsequently excluded, on the appellee's motion. The appellant complains of this ruling by the court. It will be observed that as to the specific rumors concerning which inquiry was made on cross-examination, the witness answered in the negative, and all that the witness had said was that he had heard his general reputation as to moral character questioned since the time of the trouble between the parties to this litigation. The question on redirect examination was as to a collateral matter, not touched upon in the cross-examination. Moreover, the answer given had no bearing upon the inquiry as to the appellee's general reputation as to moral character. The ruling of the trial court on this matter was clearly correct.

We find it unnecessary to specifically pass upon the four remaining assignments of error. They relate to objections sustained by the trial court to the offers of testimony by the ap-pellant, which tended to establish that defendant's wife, at the time when Dr. Amick attended her as a physician, was suffering as a result of an abortion, which was the cause of her death, and that the doctor was in no way responsible for, or had anything to do with, the abortion.

The uncontradicted testimony shows that the appellee's wife died of septicaemia, caused by an abortion, and that the appellant was in no way responsible for the abortion. The evidence shows that, prior to the time of the alleged slander, considerable antagonism existed, as between the Montrosses and Dr. Amick, with reference to municipal and civic affairs, and considerable feeling by the appellee, as against the appellant. No complaint is made as to the instructions given by the court to the jury. The court instructed the jury that all that the appellant was required to prove, to entitle him to recover, was that he is a physician, surgeon, and doctor, and the speaking by the defendant of said slanderous words, or those in substance, to or

in the presence of Dr. A. C. Schoenthaler. The court properly instructed the jury, both as to compensatory and exemplary damages. The jury returned a verdict for nominal damages in the amount of $1.00.

The case was submitted to the jury by instructions as to which no complaint is made, and everything was proven which the rejected testimony hereinbefore mentioned sought to establish. It is thus apparent that any error on the part of the court in rejecting the offered testimony is nonprejudicial.

Since we find no prejudicial error in the record as to Count 5, the action of the trial court as to said count is affirmed.

Because of the error hereinbefore pointed out in withdrawing Count 2 from the consideration of the jury, the judgment of the trial court is reversed, and the cause remanded for a new trial as to said count.

Appellee's motions to strike appellant's amendment to brief and argument and appellant's amendment to abstract, which were submitted with the case, are hereby overruled.—*Affirmed in part; reversed in part.*

All the justices concur.