# Richmond

## Wesley James Weaver v. Beneficial Finance Company, Incorporated, Et Al.

January 26, 1959.

Record No. 4881.

Present, All the Justices.

The opinion states the case.

*Philip White* (*William N. Eason*, on brief), for the plaintiff in error.

*Richard B. Spindle, III* (*Willcox, Cooke, Savage & Lawrence*, on brief), for the defendants in error.

Snead, J., delivered the opinion of the court.

This appeal is a sequel to *Weaver* v. *Beneficial Finance Co., Inc., et al.*, 199 Va. 196, 98 S. E. 2d 687. Wesley James Weaver instituted action against Beneficial Finance Company, Incorporated and R. S. Costigan, its manager, for damages due to a republication of an alleged false, insulting and libelous letter written by Costigan to Weaver's employer. There the question was whether the action

was barred by the statute of limitations, and we held the action was not barred and remanded the case for trial on its merits. Thereafter defendants filed their grounds of defense, a special plea and a motion for summary judgment. The motion alleged that the letter was not libelous *per se;* that it was not actionable as a matter of law, and that no compensable damages resulted therefrom. The court below, after hearing argument of counsel, entered judgment for defendants on November 29, 1957.

The litigants will be referred to in accordance with the respective positions they occupied in the trial court.

The issue involved on this appeal is whether or not the language used in the letter is libelous *per se.* Plaintiff concedes that his motion for judgment does not allege special damages, but maintains that under the attending facts and circumstances alleged in it, the letter is libelous *per se* under the statute on insulting words, (§ 8-630, Code 1950) and that no averment or proof of any special damage is required.

Plaintiff alleged in his motion for judgment that as additional security he gratuitously endorsed a note of William E. Webster and his wife, secured by a deed of trust on certain personal property, for a loan of $300 advanced by defendants to the Websters; that on January 29, 1955 defendants informed him that the Websters had defaulted in the monthly payments and called upon him to pay the balance due of $95, at which time he paid $5.20 and agreed to pay the then balance on or about June 15, 1955 which was satisfactory with defendants, and that on February 23, 1955 defendants unlawfully and with malice wrote an insulting and libelous letter to Industrial Relations Officer, Naval Air Station, Norfolk, Virginia, plaintiff's employer, with intent to force payment which was not due.

He further alleged that the letter was republished on or about March 21, 1956 before a promotion board convened to consider his record, at which time the contents of the letter were first made known to him; that the letter suggested that he was and is dishonest, insolvent and one to whom credit should not be extended; that it attacked his reputation for integrity, and that defendants knew the letter would be a permanent part of his record.

The letter reads as follows:

"On September 23, 1953, Mr. Weaver, who gave his employment as above secured a loan of $300.00. This money was lent on a fifteen months contract with payments of $24.29 per month. At no

time has Mr. Weaver honored his contract promptly and now his account is four months past due. He refuses to answer any correspondence and personal calls have no effect.

"We realize that Government agencies can take no cognizance of a debt complaint against an employee beyond acknowledging receipt of the communication and that there is no legal jurisdiction over Federal pay excepting those matters relating to Government claims. However, it is understood that the Department of the Navy expects all Naval personnel to discharge acknowledged and just obligations and desires to cooperate with persons and firms when difficulty in obtaining settlements is encountered.

"Instigation of the removal of Mr. Weaver from his employment is not the intent of this company. However, we feel that if someone in a supervisory position will explain his liabilities and the possible effects of same upon himself, he will then be induced to bring his account to date and pay promptly thereafter.

"Any consideration given us in regard to this matter will be greatly appreciated."

The record does not show that plaintiff's position was with the Naval Air Station, but counsel stated at the bar of this court that he is employed as a mechanic.

Plaintiff cites *Holt v. Boyle Brothers, Inc.*, 217 F. 2d 16, in support of his contention that the language used in the letter is libelous *per se*. This was an action brought by Edward E. Holt and his wife against Boyle Brothers, Inc., a retail store, for slander, libel and malicious abuse of process. The United States District Court directed a verdict for defendant, and on appeal the court reversed the lower court and held that the statement in a letter written by a representative of defendant to the personnel officer of Naval Research Laboratory, employer of the husband, that Holt had refused to pay a just debt was defamatory and actionable as libel, even though no special damage was shown. The court also held that Boyle was subject to action for malicious prosecution, but we are not here concerned with that phase of the case.

The Holts had never dealt with Boyle Brothers, Inc., and consequently owed it nothing. Boyle telephoned Holt at his place of business and demanded payment of an alleged debt. Holt assured Boyle that he and his wife had never been in the store and were not indebted to the company. Notwithstanding this assurance, Boyle wrote the personnel officer alleging that Holt owed the company

$127.75 and that "every reasonable effort to collect direct had failed." Holt was informed in a memorandum by the personnel officer he had been asked to help collect a debt. It stated "failure to honor your just debts may reflect adversely upon your suitability for continued employment with the Navy. Each of the communications received from your creditors is filed in your personal folder and inevitably serves as a part of the total record considered when personnel actions of vital importance to you are taken. * * * If as a result of failure to meet your obligations, evidence is accumulated reflecting upon your suitability for continued employment, your removal may be effected. * * *"

Moreover, Boyle mailed the Holts "a formidable court-like paper" demanding payment of $127.75 and threatening court action. He later falsely informed the Holts that a judgment had been recovered against them in the Municipal Court. The Holts employed counsel who ascertained suit had been instituted but judgment had not been obtained. At the trial Boyle's attorney stated: "These are not the defendants that I meant." The court dismissed the suit, with prejudice, for lack of prosecution. Regardless of this Boyle appealed to the Municipal Court of Appeals, where the judgment was affirmed.

At page 17 of the opinion the court stated:

"To say, as Boyle did in the letter to the personnel officer, that Holt refused to pay a just debt, was plainly defamatory, for this sort of charge 'obviously would hurt the plaintiff in the estimation of an important and respectable part of the community'. Nothing more is necessary to make written or printed defamation actionable ¬s libel. Peck v. Tribune Co., 214 U. S. 185, 190, 29 S. Ct. 554, 53 L. Ed. 960. Thackrey v. Patterson, 81 U. S. App. D. C. 292, 157 F. 2d 614. Statements in Holtz v. National Furniture Co., 61 App. D. C. 80, 57 F. 2d 446, and Cohen v. Marx Jewelry Co., 67 App. D. C. 347, 92 F. 2d 498, which imply that a charge of failing to pay a just debt is not actionable unless special damage or some other special circumstance is shown, are therefore erroneous."

We agree with defendants' contention that the facts in the *Boyle* case are dissimilar to those alleged in the case at bar. Defendants, however, concede that if the law enunciated in the *Boyle* case is to be applied in this jurisdiction, then the trial court erred in entering summary judgment. On the other hand they say that the rule in the *Boyle* case is the minority view, and that the principle applied in *M. Rosenberg & Sons* v. *Craft*, 182 Va. 512, 29 S. E. 2d 375,

where they allege the facts are similar to those in the present case, is controlling.

In 33 Am. Jur., Libel and Slander, § 60, p. 78 it is stated:

"As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous per se and does not render the author or publisher of such statement liable without proof of special damages. Such a statement does not in a legal sense necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in public esteem, or lower him in the confidence of the community. * * *" See also C. J. S., Libel and Slander, § 23, p. 67, 12 M. J., Libel and Slander, § 8, p. 45.

In *Stannard* v. *Wilcox & Gibbs*, 118 Md. 151, 84 A. 335, Harry Stannard was the Baltimore manager of Holmes Electric Protective Company, a corporation having its principal office in New York City. Wilcox & Gibbs Sewing Machine Company was a creditor of Stannard. Royal G. Best, manager, wrote a letter to Stannard's Company advising it of his delinquent indebtedness. The letter reads in part as follows:

"* * *(We) have made several requests of Mr. Stannard to pay what was owing. As long as last December he promised the writer he would do this, since which time, however, we have not received a penny from him, and we are writing him to day that unless all back payments are in this office within one week from to day, the matter will be placed in the hands of our attorney for settlement. If this is of any interest to you, and you do not desire to see one of your managers brought up in a civil suit for goods purchased on the instalment plan, we would suggest that you communicate with him to the effect that he take some steps towards meeting a just obligation incurred by his wife, and which he is legally responsible for."

As a result of the letter, Stannard instituted action for libel against Wilcox & Gibbs and also Best who signed the letter. No claim for any special damages was alleged, but Stannard contended the letter was libelous *per se*. The trial court sustained a demurrer to the

action, and on appeal the court, after reviewing cases, stated at pages 158 and 159:

"The test by which all such cases are to be passed upon, and which has been adopted with approval in this State, is that laid down in *Lumby* v. *Allday*, 1 Compton & Jervis, 301, and adhered to in *Miller* v. *David*, L. R. 9, C. P. 118, and is expressed as follows in *Wilson* v. *Cottman*, 65 Md. 190, 'the actionable character of the language must be tested by the question, whether it imputes to the plaintiff the want of any qualification such as a clerk ought to have, or any misconduct which would make him unfit to discharge faithfully and correctly the duties of a clerk.'

"To the same effect is *Nichols* v. *Daily Rep. Co.*, 3 L. R. A. N. S. 339 (116 Am. St. Rep. 796), where it is said, 'It may be conceded that words charging non-payment of debts, insolvency or which tend to impute want of credit or integrity are actionable without alleging special damage when they refer to merchants, tradesmen and others in occupations where cerdit (sic) is essential to the successful prosecution, but generally these same words are not actionable *per se*, when they do not refer to persons in their office, profession, trade, business or calling.' To the same effect is *Hanaw* v. *Jackson Patriot Co.*, 98 Mich. 506.

"A generalization from all these cases leads to the conclusion that in order for words not ordinarily actionable in themselves to be libelous *per se*, because affecting the plaintiff in respect to his business, occupation or profession, it is necessary that the words have a reference to him in that capacity. Words which impute to persons engaged in business, such as merchants, traders and others in occupations where credit is essential to the successful prosecution of their occupation, non-payment of debts, want of credit or actions which tend to lessen their credit, are libelous *per se*, unless they are privileged communications.

"In this case Mr. Stannard was not in business on his own account, he was the local manager for a non-resident corporation. It is not alleged or suggested that he had any occasion for the use of credit, or that his credit had been in any way impaired or affected. The statements in regard to him in no way related to the manner of his performance of his duties as manager of the Holmes Electric Protective Company, or charged him with being unfit for the proper performance of them, nor did he lose his position because of the letter in question, in which case he would have sustained special

damage. Under these conditions, and applying the rule of law already stated, the letter can not be regarded as actionable *per se*, and the trial Court committed no error in sustaining the demurrer." See also *Urban, et al. v. Hartford Gas Co.* 139 Conn. p. 301, 93 A. 2d 292; *Davis v. General Finance & Thrift Corporation*, 80 Ga. App. p. 708, 57 S. E. 2d 225; *Liebel v. Montgomery Ward & Co., Inc., et al.* 103 Montana, p. 370, 62 P. 2d 667.

*M. Rosenberg & Sons v. Craft, supra,* involved an action by Craft against Rosenberg for libel. The motion for judgment contained a count of common law libel and a count of insulting words under the statute. Craft had been a debtor of Rosenberg, a retail merchant trading as Oak Hall, who sold on the installment plan, but he had paid his account in full. Thompson, a brother-in-law of Craft, made a purchase from Rosenberg and instead of having the charge made in his own name, had it entered on the books of Rosenberg in the name of Craft. Later Craft, in response to a letter from Rosenberg requesting payment, advised Rosenberg on April 9, 1942 that he did not owe the debt. Rosenberg then examined the sales slip, and among several notations he made on his books was one that Thompson made the purchase without permission of Craft and had "done this several times" and also that "Craft says positively sell no one but himself and wife."

On October 13, 1942 Rosenberg mailed Craft's employer a letter which read in part:

"We are informed by his former employer that he is employed with your Company. The reason we are trying to locate this man is that he owes us a balance of 16.00 on account, which amount is long past due."

His employer acknowledged the letter from Rosenberg and wrote the following memorandum to Craft:

"We are today in receipt of a letter from Oak Hall, Roanoke, Va., stating that your account of $16.00 with them is long past due. Letters of this kind are very annoying to this Company and we trust you will see fit to get in touch with Oak Hall and make immediate arrangements to take care of this account before they find it necessary to start legal action against you."

Upon receipt of this memorandum, he took it to Rosenberg who made a notation on it that the indebtedness was not due by Craft; that it was owed by his brother-in-law, Thompson, and that the purpose of the letter was to locate Thompson. Craft then showed this

notation to his employer. On October 22, 1942 Rosenberg wrote a letter to his employer giving substantially the same information.

There a jury verdict was returned for $400. Among the questions presented on appeal were "whether the words, at common law, are actionable *per se*" and "whether special damages were sufficiently alleged and proven to submit this issue to the jury."

In reversing the judgment of the lower court, setting aside the jury verdict and entering final judgment for defendant, we held that the words used in the letter were not actionable *per se*, and that special damages were not sufficiently alleged and proven. We also held that the enactment of the 1940 amendment to the statute on insulting words which eliminated the sentence providing that no demurrer shall preclude a jury from passing thereon, clearly indicates that it is the intent of the General Assembly that the court should exercise the same power and authority over actions for insulting words that it exercises over actions of libel and slander.

We said at page 519:

"There is no suggestion or imputation of dishonesty, insolvency or bankruptcy in the letter. It is not alleged that the plaintiff was a merchant or trader, or that he was engaged in an employment in which credit was an essential element. The alleged defamatory words do not tend to impair, nor are they, in any way, related to, the manner of the performance of the duties of plaintiff's employment. The common law rule applicable is that the false defamatory words are not actionable *per se*. * * *"

And at pages 528, 529 we made the following observation:

"The great bulk of business is conducted on credit, varying in length from a few days to six months or a year. Creditors, in order to make prompt collections, are compelled to send dunning letters to debtors. To hold that an erroneous statement in such a letter, to the effect that a debt is long past due, is insulting and actionable, would subject creditors to needless hazards and hardships. * * *"

In the case at bar, the letter does not suggest dishonesty, insolvency or bankruptcy. The motion for judgment does not allege that plaintiff was a merchant or trader, or that he was engaged in a vocation where credit was necessary. The alleged defamatory statements made in regard to him are in no way related to the manner of his performance of his duties as a mechanic. We hold that the letter is not libelous *per se*. That being the case, it is not actionable since plaintiff has failed to allege any special damages.

The trial court properly entered judgment for defendants, and the judgment appealed from is affirmed.

*Affirmed.*