17867

John L. BROWN, Respondent, v. NATIONAL HOME INSURANCE COMPANY, Appellant

(123 S. E. (2d) 850)

*Messrs. Turner, Padget, Graham & McDonald,* of Columbia, *for Appellant,*

*Messrs. George D. Levy* and *C. M. Edmunds,* of Sumter, *for Respondent,*

490

*Messrs. Turner, Padget, Graham & McDonald,* of Columbia, *for Appellant, in Reply,*

January 31, 1962.

Moss, Justice.

John L. Brown, the respondent herein, brought this action against National Home Insurance Company, the appellant herein, to recover actual and punitive damages on account of an alleged libelous letter written by an agent of the appellant, under the date of June 13, 1960. The original of the letter was sent to the respondent and a copy thereof was sent to R. Lee Kelly, the Insurance Commissioner of the State of South Carolina. The letter is as follows:

"The records of our company indicate your Account Current owing this company as of this date to be $2,312.48. We have not received any payment of your account since August 31, 1958.

"Accordingly, this is to notify you that this company makes demand for immediate payment of this amount in full.

"A copy of this letter is forwarded to the Insurance Commissioner of the State of South Carolina, Mr. R. Lee Kelly."

The respondent alleged in his complaint that the aforesaid letter "was falsely, maliciously and wantonly mailed to the Insurance Commissioner for the State of South Carolina and by reason thereof," he has been, "greatly embarrassed and humiliated and his business as insurance agent has been irreparably damaged and his friendly relations with the office of the South Carolina Insurance Commissioner have been greatly impaired."

The appellant admitted the writing and mailing of the letter but denied that the letter was false and contended that

the contents thereof were absolutely privileged. It was further alleged that if the letter was not absolutely privileged, it was qualifiedly privileged. It was further alleged that the contents of the letter were true and not libelous. The answer also alleged that the respondent had not been damaged by the sending of the letter nor was his friendly relations with the South Carolina Insurance Commissioner impaired.

The case was tried before the Honorable G. Badger Baker, and a jury, resulting in a verdict for the respondent for actual and punitive damages. The appellant made timely motions for a nonsuit and a directed verdict on the grounds of (1) absolute privilege; (2) qualified privilege; (3) truth of the contents of the letter and (4) the failure of the proof of any damages the law would recognize as such under the developed facts. These motions were refused. After the rendition of the verdict in favor of the respondent, the appellant moved for a judgment *non obstante veredicto,* and in the alternative for a new trial, on the same grounds as were included in the motions for a nonsuit and a directed verdict. These motions were refused. This appeal is from the Court's denial of the motions made by the appellant.

We think this appeal can be disposed of by determining whether there was proof of damages sufficient to support a verdict in favor of the respondent.

A libel *per se* is one which is actionable on its face. A *per quod* libel, however, is one not actionable on its face, but becomes so by reason of the peculiar situation or occasion upon which the words are written. *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855; *Spigener v. Provident Life & Accident Ins. Co.,* 148 S. C. 249, 146 S. E. 8; *Norton v. Great Atlantic & Pacific Tea Co. et al.,* 184 S. C. 525, 193 S. E. 126.

In the case of *Whitaker v. Sherbrook Distributing Co.,* 189 S. C. 243, 200 S. E. 848, an action was brought to recover damages for an alleged libel, based upon a letter circulated and published by the appellant, in which it was

charged that "Whitaker has been very lax, and, in our opinion, his negligence is a form of dishonesty." In affirming the judgment in favor of the respondent, this Court said:

"In order to render words libelous *per se,* their injurious character must appear upon their face. The nature of the language used must be such that the Court can legally presume without proof that the plaintiff has been damaged as a natural, necessary and proximate consequence from the use of the words employed in the publication. The words must be of such a character that a presumption of law will arise therefrom that the plaintiff has been degraded in the estimation of his friends or of the public, or has suffered some other loss either in his property, character, reputation or business or in his domestic or social relations. *McClain v. Reliance Life Insurance Co.,* 150 S. C. 459, 148 S. E. 478; *Duncan v. Record Pub. Co.,* 145 S. C. 196, 143 S. E. 31.

"Therefore, the real practical test, by which to determine whether special damage must be alleged and proved in order to make out a cause of action for libel, is whether the language is such as necessarily must, or naturally and presumably would, occasion the damages in question."

In determining whether the letter is libelous *per se,* the contents thereof must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. Words which are libelous *per se* do not need an innuendo, and conversely, words which need an innuendo are not libelous *per se. Flake v. Greensboro News Company, et al.,* 212 N. C. 780, 195 S. E. 55.

We have held that language alleged to be defamatory must be construed as a whole. *Williamson v. Askin & Marine Co.,* 138 S. C. 47, 136 S. E. 21.

In 33 Am. Jur., Libel and Slander, section 60, page 78, it is stated:

"As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a

tráder or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous *per se* and does not render the author or publisher of such statement liable without proof of special damages. Such a statement does not in a legal sense necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in public esteem, or lower him in the confidence of the community. * * *" See also 53 C. J. S., Libel and Slander, § 23, page 67.

In *Prickett v. Western Union Telegraph Co.,* 134 S. C. 276, 132 S. E. 587, this Court held that the words "party promised to pay and refused" were not libelous *per se,* and, in the absence of allegation of special damage or extrinsic facts and circumstances which would render it libelous *per se,* complaint was insufficient to state a cause of action.

The complaint in this action does not allege or suggest that the respondent had any occasion for the use of credit nor that his credit has been in any way impaired or affected. The complaint does allege that the publication of the letter was libelous and that it damaged the respondent's business as an insurance agent. This, however, is a legal conclusion and not an allegation of fact.

The mailing of the alleged libelous letter to the Insurance Commissioner of South Carolina could not affect the credit standing of the respondent with his clientele nor could he lose business thereby. The Commissioner is neither a potential creditor nor customer of the respondent.

We conclude that the letter as published was not libelous *per se.* In publications which are libelous *per quod,* the innuendo and special damages must be alleged and proved. If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such facts and cirstances must be set forth and connected with the words

charged by proper averment. *Costas v. Florence Printing Co.,* 237 S. C. 655, 118 S. E. (2d) 696.

The complaint alleges that by reason of the publication of the aforesaid letter, the respondent has been embarrassed and humiliated. The testimony thereabout is as follows: "Q. Mr. Brown, were you embarrassed, humiliated by this letter being sent to the Insurance Commissioner? A. I sure was, yes, sir."

It has been held that humiliation is an element of damage in an action for defamation. *McClain v. Reliance Life Ins. Co.,* 150 S. C. 459, 148 S. E. 478; and *Smith v. Smith,* 194 S. C. 247, 9 S. E. (2d) 584. However, in both of the cited cases, the defamatory language was actionable *per se.* In the *McClain case* the letter in question was held to charge the plaintiff with dishonesty, failure to keep his word, and with false representation and fraud; and in the *Smith case* the plaintiff was slandered by the accusation that she had poisoned her husband.

In the North Carolina case of *Flake v. Greensboro News Company,* 212 N. C. 780, 195 S. E. 55, it was held that the publication there involved was not libelous *per se* and that "The law seeks to compensate for damage to the person, the reputation, or the property of an individual. It cannot and does not undertake to compensate for mere hurt or embarrassment alone."

In the Georgia case of *Mell v. Edge,* 68 Ga. App. 314, 22 S. E. (2d) 738, it was held that the special damages necessary to support an action for defamation, where the words are not actionable in themselves, does not include mere annoyance or loss of peace of mind. Cited in connection with this is Odgers on Libel and Slander, 5th Ed., 378. Where a libel is not actionable *per se,* it has been held that mental suffering cannot be allowed as a part of the damages without proof of some other injury or damage. 33 Am. Jur., Libel and Slander, Section 205, page 195; 90 A. L. R., at page 1200. We conclude that embarrassment and humiliation

alone is not a proper element of damage where the alleged libel is not actionable *per se.*

The respondent also alleges that his business as an insurance agent has been irreparably damaged. There is a total absence of any evidence that the respondent lost a single customer or client as a result of the writing of the aforesaid letter. There is a total absence of any proof that the letter in question was published to any person with whom he did business or upon whom he relied for credit. There is no evidence that the respondent suffered any pecuniary loss of any kind. There is, in our opinion, no evidence that the writing of the letter in question has damaged the respondent as an insurance agent.

The respondent also asserts as an element of damage that his relations with the office of the South Carolina Insurance Commissioner have been greatly impaired. The respondent testified as follows:

"Q. You say the Insurance Commissioner has power to revoke your license?

"A. Yes, sir.

"Q. Has he done so?

"A. No, sir.

"Q. Has he ever called you on the carpet about this letter?

"A. No, sir, I called them."

The record also shows that J. E. McDavid, Jr., Deputy Insurance Commissioner of South Carolina, testified that he received a copy of the alleged libelous letter. He further testified:

"Q. Did you take any action on that letter?

"A. No, sir.

"Q. Did you communicate with Mr. Brown on receiving that letter?

"A. No, sir.

"Q. Is Mr. Brown's license, as far as you know, in current status with the Insurance Department?

"A. Yes, so far as I know. * * * And we would recognize any application from his company at this time."

Again this witness testified as follows:

"Q. Have his relations in any manner been impaired?

"A. No, sir. As I started to say, if there are any friendly relations impaired, he has what we call a red flag put on his card and that indicates that we have thoroughly investigated a situation involving that agent and he is ko'd for license in the future.

"Q. Is such a red flag on Mr. Brown's card?

"A. There is no red flag of that nature on his card.

\* \* \*

"Q. So far as you are concerned, in your official capacity, you are not concerned about the charges made against Mr. Brown in that letter, is that right?

"A. Yes, sir.

"Q. You mean that you are not concerned?

"A. That's right."

It is perfectly clear to us from the testimony of the Deputy Insurance Commissioner above quoted, that the relations of the respondent with the office of the Insurance Commissioner of South Carolina have not been impaired. This is the undisputed testimony in the record.

In our opinion, the evidence in this case does not support a verdict in favor of the respondent. The mailing of the letter to the Insurance Commissioner has not caused the respondent any legal damage. We think the trial Judge should have directed a verdict for the appellant.

The judgment is, therefore, reversed and the cause remanded for entry of judgment under Rule 27.

Reversed.

TAYLOR, C. J., and LEWIS and BUSSEY, JJ., concur.