ALICE RAGLAND, appellant, v. HOUSEHOLD FINANCE CORPORATION and J. R. COLTRAIN, appellees.

No. 50763.

(Reported in 119 N.W.2d 788)

February 12, 1963.

Stanford L. Trumbower and McMullin, Test & Baird, all of Des Moines, for appellant.

Harlan Thoma of Brody, Parker, Roberts, Thoma & Harris, of Des Moines, for appellees.

THORNTON, J.—Plaintiff seeks damages for libel. Defendants mailed the following letter to plaintiff's employer:

"HOUSEHOLD FINANCE CORPORATION

"305 Seventh Street —Phone CHERRY 3-6255

"Des Moines 9, Iowa

"August 30, 1961

"Superintendent of Saydell School District

"5601 E. Sixth

"Des Moines, Iowa

"Dear Sir:

"Mrs. Alice Ragland, Teacher, Burwick School, has a principal balance with this office of $326.17. She borrowed $371.89

on August 6, 1959, repayable in 24 monthly instalments [sic] of $21. Her account is now five months in arrears with no payment since March 1, 1961. There appears to be no dispute as to the amount of debt.

"It is Household's policy to lend money in an amount, and for a length of time, which will suit the convenience of the applicant, always, of course, consitent [sic] with a realistic appraisal of his ability to repay the loan. Accordingly, prior to our having granted a loan to Mrs. Ragland, we conducted a complete credit investigation verifying basic information provided us by Mrs. Ragland and obtaining additional information necessary to make a decision on her credit-worthiness. This was accomplished by contacting various sources of credit information and developing a factual credit report based on her character, income, and paying habits.

"Normal collection efforts, short of litigation, have been pursued in an effort to work out satisfactory arrangements with Mrs. Ragland. Her apparent inability to pay may be warranted. However, before taking any further action, we would appreciate any advice you might care to offer.

"We will be grateful for your cooperation and an early reply.

"Very truly yours,
"J. R. Coltrain, Manager
"JRC:ml
"cc: Mrs. Clarence E. Ragland
"Encl."

Plaintiff alleges she is a married woman and a schoolteacher employed as such by the school district; that the statements made were untrue and maliciously made to the superintendent of the school district and to others unknown to her; the same were intentionally made with intent to impute dishonesty, unfaithfulness, cheat, and unworthiness of credit to plaintiff and were so understood by the persons to whom published, that the statements were intended to be understood in a sense defamatory to plaintiff. She alleges she was damaged in the sum of $20,000

and prays for judgment for that amount plus $50,000 exemplary damages. She does not allege special damages.

Defendants moved to dismiss plaintiff's petition because 1, the communication is not libelous as a matter of law, and 2, as a matter of law the communication is privileged.

The trial court sustained both grounds of the motion. We agree.

I. The first ground of the motion is good. The statements in the letter are not libelous per se. Where a writing is libelous per se damages are presumed and it is not necessary to plead special damage. Where a writing is libelous per quod, i.e., by reference to the inducement and innuendo, it is necessary to plead special damage to state a cause of action. Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 245 N.W. 231, 86 A. L. R. 839.

The determination of whether a publication is libelous per se is for the court in the first instance. Fey v. King, 194 Iowa 835, 190 N.W. 519; Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 245 N.W. 231, 86 A. L. R. 839; and Haas v. Evening Democrat Co., 252 Iowa 517, 107 N.W.2d 444. This determination is made by reference to the statements made, without reference to the defamatory sense in which plaintiff claims such statements were intended and understood. Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 245 N.W. 231, 86 A. L. R. 839. In this case the statements in the letter are that plaintiff is five months overdue in her loan payments, normal collection efforts have failed, and her apparent inability to pay may be warranted.

Plaintiff argues from section 659.1 and section 737.1 (all Code references herein are to the Code of Iowa, 1958) the statements contained in the letter are libelous per se. Support is also found for her position in Codner v. Central Credit Rating Agency, 180 Iowa 188, 161 N.W. 657, and Turner v. Brien, 184 Iowa 320, 167 N.W. 584, 3 A. L. R. 1585.

In Fey v. King, 194 Iowa 835, 839, 190 N.W. 519, we point out that section 737.1, defining the crime of libel, sets forth two elements, 1, malicious defamation, and 2, publication of such

defamation, "* * * tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; * * *." Both elements must concur. The published matter must be defamatory in a legal sense and is libelous when published in any manner provided in the statute. Haas v. Evening Democrat Co., 252 Iowa 517, 107 N.W.2d 444, and Plendl v. Beuttler, 253 Iowa 259, 111 N.W.2d 669.

From section 659.1 plaintiff argues she has fulfilled the pleading requirements because that section provides: "* * * it shall not be necessary to state any extrinsic facts for the purpose of showing * * * the matter was used in a defamatory sense; but it shall be sufficient to state the defamatory sense in which such matter was used, * * *."

She has done this when she alleged the statements were intended to impute dishonesty, unfaithfulness, cheat, and unworthiness of credit, and were so understood. The purpose of section 659.1 is not to change the substantive law of libel but to allow pleading in general terms and to do away with technical rules of pleading relative to "inducement", "colloquium" and "innuendo" required by the common law. Amick v. Montross, 206 Iowa 51, 60, 220 N.W. 51, 58 A. L. R. 1147.

It should be noted section 737.3, dealing with what may be set forth in an indictment, makes no reference to setting forth the defamatory sense in which the matter was used, but refers only to the application to the party libeled of the defamatory matter.

The question of whether or not the statements published constituted a malicious defamation is in no way affected by section 659.1.

Codner v. Central Credit Rating Agency, 180 Iowa 188, 190, 161 N.W. 657, is a case in which defendant published a credit rating of plaintiff. The key to the rating showed the rating meant, " 'Phone this office for special instructions, or C. O. D.' " Plaintiff alleged it was intended to impute to him insolvency, dishonesty in his business dealing, unwillingness to pay debts, and unworthiness of credit. A demurrer was filed raising the

same questions that are raised here. We held the pleading was proper under section 3592, now section 659.1, and the truth of the defamatory sense and malice were admitted and that a cause of action was stated and the admission of malice stood in the way of a qualified privilege. There is no mention of a plea of special damages in the opinion.

In Turner v. Brien, 184 Iowa 320, 325, 326, 167 N.W. 584, 3 A. L. R. 1585, we affirmed a plaintiff's judgment against a similar attack. Plaintiff's name was also published at defendant's instance in a credit rating publication. The rating was explained and supported by an allegation of defamatory sense. We said:

"The words were actionable per se as charged. * * * Damages are presumed. * * * It is the thought conveyed, not the words, that does the harm. One who is charged with refusing to pay an honest debt is charged with dishonesty—a charge which, if believed, affects his good name, fame, and reputation among his fellows, and deprives him of public confidence and esteem."

From the examination of later authorities we are convinced the views expressed in the Turner case and in the Codner case, in the event no special damages were pleaded, no longer represent the majority and better view. To the extent they conflict with the views herein expressed these two cases are overruled.

II. The majority and better view is expressed in American Jurisprudence and Corpus Juris Secundum as follows:

33 Am. Jur., Libel and Slander, section 60, page 78:

"As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous per se and does not render the author or publisher of such statement liable without proof of special damages. Such a statement does not in a legal sense necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in

982

public esteem, or lower him in the confidence of the community."

53 C. J. S., Libel and Slander, section 23, page 67:

"As a general rule, however, where the charge or imputation does not affect the person in his business, vocation, or profession, it is not libelous per se merely to publish of him that he owes money, or owes a debt which is long past due, or to charge him with mere inability to pay his debts, or failure to pay a just debt, or with a refusal to pay such a debt. Such a charge or imputation is actionable as libel only where it has caused special damages to plaintiff."

Defendants cite Weaver v. Beneficial Finance Co., 200 Va. 572, 106 S.E.2d 620, and Patton v. Jacobs, 118 Ind. App. 358, 78 N.E.2d 789. Both quote the general rule stated above from American Jurisprudence. The opinion in the Weaver case carefully examines a number of similar cases.

Recent cases supporting the general rule are Urban v. Hartford Gas Co., 139 Conn. 301, 93 A.2d 292, 295; Haggard v. Shaw, 100 Ga. App. 813, 112 S.E.2d 286; Brown v. National Home Insurance Co., 239 S. C. 488, 123 S.E.2d 850, a letter written to the state insurance commissoner; Edwards v. Crane, 292 P.2d 1034 (Okla. 1956); Reese v. Haywood, 235 Ark. 442, 360 S.W.2d 488 (1962); and Hudson v. Pioneer Service Co., 218 Ore. 561, 565, 346 P.2d 123, 125, a credit report case, in which the court quotes from Harper on Torts, page 521, section 243, in part as follows:

" '* * * If the plaintiff is not a trader, the better rule seems to be that the imputation is not libelous, unless it fairly implies that the plaintiff has failed to pay the debt from dishonest motives and from a desire to defraud the creditor.' "

III. We do not find an authority holding a statement that a schoolteacher owes an unpaid debt in anyway reflects on her professional ability or qualifications. Credit is not essential to her profession. Examples of affecting a person in his trade or profession are, Plendl v. Beuttler, 253 Iowa 259, 111 N.W.2d 669, a contractor was charged with repeatedly performing work in an unworkmanlike manner; Burghart v. Scioto Sign Co., 191 Iowa 384, 179 N.W. 77, a statement that a sales representative was not loyal and faithful in taking orders for her em-

ployer; and Amick v. Montross, 206 Iowa 51, 220 N.W. 51, 58 A. L. R. 1147, stating a physician was drunk.

The statements allegedly made of plaintiff do not impute insolvency or that plaintiff has failed to pay the debt from dishonest motives and from a desire to defraud the creditor. They do not relate to her profession. And in a legal sense do not necessarily expose her to public hatred, contempt or ridicule, nor do they degrade her in society, lessen her in public esteem, or lower her in the confidence of the community. They are not libelous per se, and without a plea of special damage the petition does not state a cause of action.

It is not necessary to consider the question of privilege. The ruling of the trial court was right, it is—Affirmed.

All JUSTICES concur.